UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAWRENCE JAMES CROW,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>KEITH HOWARD YORDY,<br><br>　　　　　　Respondent. | Case No. 1:17-cv-00125-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Lawrence James Crow ("Petitioner" or "Crow"), challenging Petitioner's Bingham County conviction of attempted first-degree murder. (Dkt. 1.) On June 22, 2018, the Court dismissed Claims 1, 2, 3, 4(c), and 4(e) as procedurally defaulted or noncognizable. (Dkt. 19.) The remaining claims in the Petition—Claims 4(a), 4(b), and 4(d)—are now fully briefed and ripe for adjudication on the merits. (Dkt. 20, 21, 22.)

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 10.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 8.) Having carefully reviewed the record in this matter,

**MEMORANDUM DECISION AND ORDER - 1**

including the state court record, the Court concludes that oral argument is unnecessary.[1] *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying habeas corpus relief.

## BACKGROUND

The following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct absent clear and convincing evidence to the contrary:

> In July 2010, officers responded to a shooting involving Crow and his ex-girlfriend (victim). Crow and the victim dated for approximately six years and separated around one month prior to the shooting. Crow and the victim had a child together and, at the time, were sharing custody. On the day of the shooting, Crow had custody of the child (at Crow's mother's residence) and was to return the child to the victim around noon. The victim observed Crow pull into her driveway that day. However, instead of dropping off the child, Crow backed up and left. The victim indicated that normally she would have been alone, but that day her mother was at her residence. The victim later surmised Crow had seen her mother's car in the driveway and left.
>
> A short time thereafter, the victim drove to Crow's mother's residence to pick up the child. When the victim arrived, Crow desired to talk about their relationship and the victim agreed. While talking on the front porch, the victim realized Crow had been drinking and decided to leave. The victim attempted to open the front door to retrieve her child, but found the door was locked and so she knocked. Because Crow was acting aggressively, the victim dialed 911 on her cell phone but did not send the call initially. Crow then drew a handgun from his pants and stated to the victim, "If I can't have you, no one can." Crow also stated "I got this for you" in a threating manner while pointing the gun at the victim. By this time, the front door had been unlocked by someone

---

[1] The Court also denies Petitioner's request for an evidentiary hearing. (*See* Dkt. 21 at 2.) Because Petitioner's only remaining claims were adjudicated on the merits in state court, this Court is prohibited from holding such a hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

**MEMORANDUM DECISION AND ORDER - 2**

within the house. The victim fled into the house and dialed 911. Crow pursued her. Crow again pointed the gun into the victim's face and chest, and the victim pushed the gun away. Crow fired the gun, wounding the victim in the arm.

The victim retreated into a bathroom and locked the door. The victim heard one or two additional shots. One of these shots went through the bathroom door, although missing the victim. Crow subsequently gained entry into the bathroom. In desperation, the victim began hugging Crow, telling him that she would come back to him. Crow loosened his grip on the gun and the victim seized it and turned it over to Crow's sister. Police arrived shortly thereafter.

(State's Lodging B-4 at 1-2.) *See* 28 U.S.C. § 2254(e)(1).

In the Seventh Judicial District Court in Bingham County, Idaho, Petitioner was charged with attempted first-degree murder and domestic battery involving traumatic injury in the presence of a child, along with two sentencing enhancements for use of a firearm and for infliction of great bodily injury. (*Id*. at 2.) Petitioner eventually pleaded guilty to attempted first-degree murder. In exchange, the state dismissed the sentencing enhancements, which, by that time, were the only remaining charges.[2] Petitioner was sentenced to a unified term of 15 years in prison, with 9 years fixed, and was ordered to pay a civil fine. (*Id*.)

Petitioner appealed his sentence, the civil fine, and the trial court's denial of his motion for reduction of sentence under Idaho Criminal Rule 35. The Idaho Court of Appeals reduced the amount of the fine, but otherwise affirmed the judgment of conviction. (*Id*. at 2-6.)

---

[2] The state had previously amended the information to dismiss the domestic battery count. (State's Lodging A-1 at 132-33, 156-60.)

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner filed a state post-conviction petition asserting numerous claims, including claims of ineffective assistance of trial counsel. (State's Lodging C-1 at 4-10.) After holding an evidentiary hearing, the state district court dismissed the petition. (State's Lodging C-4; C-1 at 38-39.) The Idaho Court of Appeals affirmed, denying Petitioner's ineffective assistance claims on the merits,[3] and the Idaho Supreme Court denied review. (State's Lodging D-4; D-6.)

Petitioner filed the instant habeas corpus petition in March 2017. (Dkt. 1.) Claims 4(a), 4(b), and 4(d)—all of which allege ineffective assistance of counsel—remain for adjudication on the merits. In Claim 4(a), Petitioner argues that his initial trial counsel rendered ineffective assistance when—based on counsel's erroneous belief that Petitioner was facing the death penalty—counsel waived Petitioner's preliminary hearing and told Petitioner he had to plead guilty, presumably to avoid that penalty. (Dkt. 1 at 7.) Claim 4(b) asserts that Petitioner's later trial counsel never spoke to Petitioner about filing an appeal. (*Id.*) And Claim 4(d) alleges that trial counsel refused to challenge the charging document as duplicative. (*Id.*) Respondent contends that Petitioner is not entitled to habeas relief on any of these claims.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted when a federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the

---

[3] As the Court explained in its decision granting Respondent's motion for partial summary dismissal, the court of appeals declined to consider Petitioner's claims of trial error because they could have been raised on direct appeal. (*See* Dkt. 19.)

**MEMORANDUM DECISION AND ORDER - 4**

United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief may be granted only where the state court's adjudication of the petitioner's claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014); ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light

of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). State-court factual findings are presumed to be correct and are binding on a federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of, Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778.

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court as well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Conversely, if a state court factual determination is unreasonable, the federal

court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

## DISCUSSION

Respondent asserts that the Idaho Court of Appeals' rejection of Claims 4(a), 4(b), and 4(d) was reasonable under AEDPA. For the following reasons, the Court agrees.

### 1. Clearly-Established Federal Law: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel ("IAC") claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting IAC must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions of counsel "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

**MEMORANDUM DECISION AND ORDER - 10**

*Id.* at 690-91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *See Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute IAC simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981). Third, "counsel's investigation must determine trial strategy, not the other way around." *Weeden v. Johnson*, 854 F.3d 1063, 1070 (9th Cir. 2017); *see also id.* ("Weeden's counsel could not have reasonably concluded that obtaining a psychological examination would conflict with his trial strategy without first knowing what such an examination would reveal.").

The Supreme Court has explained that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage," because "[f]ailure to respect the latitude *Strickland* requires can create at least two problems in the plea context":

> First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The

> art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.
>
> Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant to escape rules of waiver and forfeiture. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo v. Moore*, 562 U.S. 115, 125 (2011) (internal quotation marks and citations omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As *Strickland* instructs:

**MEMORANDUM DECISION AND ORDER - 12**

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96.

To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112. To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference, to the state court's decision, is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the

**MEMORANDUM DECISION AND ORDER - 13**

> analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101 (internal quotation marks and citations omitted). That is, when evaluating an IAC claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190 (internal quotation marks omitted).

### 2. Petitioner Is Not Entitled to Relief on Claim 4(a)

Petitioner alleges that his initial trial counsel—who did not testify at the evidentiary hearing in state court—rendered ineffective assistance when, based on the mistaken belief that the maximum penalty for the attempted first-degree murder charge was death, counsel (1) waived Petitioner's preliminary hearing and (2) advised Petitioner that he should plead guilty.

As the Idaho Court of Appeals noted, there is no evidence contradicting Petitioner's claim that his previous trial attorney incorrectly advised Petitioner that he could be sentenced to death for attempted first-degree murder. (State's Lodging D-4 at 6.) However, the state court rejected Claim 4(a) because Petitioner had not shown prejudice—he had not "present[ed] any argument or evidence to show that, absent counsel's (presumed) error, he would not have pled guilty and would have insisted on going to trial." (*Id.* at 7.)

**MEMORANDUM DECISION AND ORDER - 14**

The Idaho Court of Appeals did not unreasonably apply federal law or base its decision on an unreasonable factual finding when it concluded that Petitioner did not suffer prejudice from initial counsel's alleged advice regarding the maximum sentence. As the state court noted, "many months passed" between the erroneous advice and Petitioner's guilty plea.[4] (*Id.* at 7. n.4) And as the plea colloquy reveals, Petitioner pleaded guilty—with the advice of new counsel and without any coercion—after he was *correctly* advised of the maximum possible penalty:

> THE COURT: Do you understand what you're charged with in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: What are you charged with?
>
> THE DEFENDANT: Attempted homicide.
>
> THE COURT: Okay. And do you understand what the max—take away the enhancements. Without the enhancements, *do you understand what the maximum possible penalty is?*
>
> THE DEFENDANT: *Yes*.
>
> THE COURT: *And what is that?*
>
> THE DEFENDANT: *15 years*.
>
> THE COURT: And what about a fine?
>
> THE DEFENDANT: I don't know.
>
> THE COURT: Okay. It's up to $25,000. Do you understand that?

---

[4] Petitioner waived the preliminary hearing on August 4, 2010, and he pleaded guilty on March 14, 2012. (State's Lodging A-1 at 66-67, 282-84; State's Lodging A-4.)

**MEMORANDUM DECISION AND ORDER - 15**

| | |
|---|---|
| THE DEFENDANT: | Yeah. |
| THE COURT: | *Do you understand I can impose both the incarceration and the fine?* |
| THE DEFENDANT: | *Yes.* |
| THE COURT: | Do you also understand that I could order that you pay restitution, if any is owed, to the victim in this matter? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | All right. Now, the Plea Agreement provides that you're going to plead guilty. The State will dismiss the enhancements, Part 2 and Part 3. And there's no agreement as to what the underlying sentence would be from the State or from this court; is that correct? |
| THE DEFENDANT: | Yeah. |
| THE COURT: | Has anyone coerced or pressured you into entering into the Plea Agreement itself? |
| THE DEFENDANT: | No. |
| … | |
| THE COURT: | Okay. Are you pleading guilty freely and voluntarily? |
| THE DEFENDANT: | Yes, I am. |
| THE COURT: | Is anyone forcing or pressuring you to plead guilty? |
| THE DEFENDANT: | No, they—no. |
| … | |
| THE COURT: | *Is it fair to say that you're pleading guilty to this crime of your own free will and without any pressure or influence from anyone else?* |

> THE DEFENDANT: *Yeah.*

(State's Lodging A-4 at 11-13 (emphasis added).)

Petitioner knew of the maximum possible sentence before he entered his guilty plea. Therefore, he cannot show prejudice based on his previous counsel's advice on that issue. Petitioner simply has not established that, if his initial counsel had properly advised him as to the maximum potential sentence, he would have insisted on going to trial instead of pleading guilty. *See Hill*, 474 U.S. at 59. Therefore, the Idaho Court of Appeals' rejection of Claim 4(a) was not unreasonable under § 2254(d).

### 3. Petitioner Is Not Entitled to Relief on Claim 4(b)

In Claim 4(b), Petitioner claims that his trial counsel did not speak to him about filing a direct appeal. (Dkt. 1 at 7.) Specifically, Petitioner asserts that his attorney "did not file an appeal from the Civil Judgment entered against the Petitioner." (Dkt 1-1 at 10.)

The Idaho Court of Appeals rejected this claim, because Petitioner's attorney did—in fact—file an appeal challenging the civil fine. (State's Lodging D-4 at 10.) Not only was this a reasonable factual finding, it was an indisputably *correct* factual finding. Because counsel appealed the civil judgment—and obtained some relief from that judgment when the appellate court reduced the amount of the fine—Petitioner cannot show either deficient performance or prejudice. Thus, the state court's decision was reasonable under AEDPA.

### 4. Petitioner Is Not Entitled to Relief on Claim 4(d)

Claim 4(d) alleges that Petitioner's trial counsel was ineffective for failing "to challenge the charging document as duplicative." (Dkt. 1 at 7.) Petitioner's argument in support of this claim is presumably the same one he asserted in state court: that the two substantive criminal charges against him—attempted first-degree murder and domestic battery—"both arose from the same conduct and 'would have been a lesser included offense of each other.'" (State's Lodging D-4 at 10 (quoting State's Lodging D-1 at 6).)

The state appellate court rejected Claim 4(d), because Petitioner "presented no evidence or testimony that the two substantive charges … resulted in a coerced plea." (*Id.*) Having reviewed the state court record, this Court agrees. Indeed, the prosecution amended the information to *eliminate* the domestic battery charge nearly one year prior to Petitioner's guilty plea. (State's Lodging A-1 at 132-33, 156-60.) Therefore, Petitioner cannot show prejudice from counsel's failure to challenge the initial charging document as duplicative. The state court's factual finding that Petitioner did not present evidence supporting Claim 4(d) was reasonable, and its holding that Petitioner did not establish ineffective assistance was a reasonable application of *Strickland*.

### CONCLUSION

The Idaho Court of Appeals' decision rejecting Claims 4(a), 4(b), and 4(d) was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Therefore, the Court will deny habeas relief.

# ORDER

**IT IS ORDERED:**

1. Claims 4(a), 4(b), and 4(d) of the Petition are DENIED. Because all other claims have already been dismissed, this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: May 13, 2019

Honorable Candy W. Dale
United States Magistrate Judge